1
2
3
4
5
6
7
8

9        **UNITED STATES DISTRICT COURT**

10       **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   EQUILON ENTERPRISES LLC,          )     Civil No: 06CV0461-B(WMc)
                                       )
13                  Plaintiff,         )
                                       )
14   v.                                )     ORDER GRANTING PLAINTIFF'S
                                       )     MOTION TO STAY ALL
15   STONECREST SQUARE AUTO CENTER,    )     PROCEEDINGS AND CONTINUING
                                       )     THE PRELIMINARY INJUNCTION
16                  Defendants.        )     IN PLACE
                                       )
17   _____  )
                                       )
18                                     )

19
20

21        Plaintiff Equilon Enterprises LLC ("Equilon") moves the Court to stay all

22   proceedings pending a final judgement from the California Superior Court on a related

23   case.  Defendant StoneCrest Square Auto Center ("Stonecrest") opposes the stay.  For the

24   reasons herein, the Court **GRANTS** Plaintiff's motion.

25   **I.       FACTUAL BACKGROUND**

26        Defendant Stonecrest operates a gasoline service station.  It has a contractual

27   relationship as a petroleum franchisee of Plaintiff Equilon.  Equilon is a successor-in-

28                                          1

1  interest to Shell Oil Company ("Shell")  and does business as Shell Oil Products U.S.[1] The

2  franchise relationship between Equilon and Stonecrest is memorialized in a Dealer

3  Agreement and related amendments, effective through December 31, 2006 ("Dealer

4  Agreement").

5         On or about October 31, 2004, Stonecrest entered into a Business Purchase and

6  Option Agreement to sell and assign its franchise to Haith Razuki as buyer and Salem

7  Razuki as guarantor (collectively, "the Razukis").  A condition of the sale was the approval

8  of franchisor Equilon.  Stonecrest submitted the sale information to Equilon for approval in

9  November 2004.  Equilon conducted interviews and financial investigations of the Razukis.

10  On May 11, 2005, Equilon issued a letter disapproving the assignment.  Equilon also sent

11  Stonecrest a notice of termination effective June 5, 2006.  In response, Stonecrest sued

12  Equilon (as Shell) in California Superior Court San Diego ("the state action") in June 2006.

13         In the state action, Stonecrest sought declaratory relief pertaining to the assignment,

14  specifically that (1) the Dealer Agreement obligates Equilon to consent to Stonecrest's

15  assignment to the Razukis; (2) Equilon is estopped from withholding its consent to the

16  assignment; and (3) Stonecrest's assignment to the Razukis is approved, permitted and

17  authorized. (Request for Judicial Notice [hereinafter "RJN"] Ex. 1.)[2]  A bench trial was

18  held on the declaratory relief issue.  In its final ruling issued on September 26, 2006, the

19  state court held that Equilon did not unreasonably withhold consent to the assignment and

20  Equilon did not violate California Business and Professions Code § 21448.  Therefore, the

21  state court concluded that there was "no basis to go forward on the legal claims asserted"

22  by Stonecrest. On October 12, 2006, the state court entered judgment for Equilon on all

23  _____

24         [1]This Order refers to Shell and Equilon collectively as "Equilon," since there appears to be no
reason at this juncture to distinguish these two parties..

25         [2] Equilon submitted four exhibits in its Request for Judicial Notice: Stonecrest's complaint and
26  first amended complaint in the state action, the state court's memorandum of decision and the state
court's order.  Under Federal Rule of Evidence 201, facts that are "capable of accurate and ready
27  determination by resort to sources whose accuracy cannot reasonably be questioned" may be judicially
noticed.  The four exhibits fall into this category and thus the Court has taken judicial notice.

28                                    2                              04cv0461

causes of action contained in Stonecrest's state court complaint. (Equilon's Supp. RJN Ex. 1.)

In March 2006, shortly after the commencement of the state action, Equilon filed a complaint against Stonecrest for declaratory and injunctive relief in federal court ("the instant case" or alternatively, "the federal action"). Equilon's federal complaint primarily addresses the propriety of Equilon's termination of the Stonecrest dealership. In its complaint, Equilon seeks declaratory relief that: (1) termination of Stonecrest's dealership was in compliance with the Dealer Agreement and with the Petroleum Marketing Practices Act ("PMPA") 15 U.S.C.§ 2802(b)(2)(A); (2) Stonecrest committed fraud such that termination was proper under 15 U.S.C.§§ 2802(b)(2)(C), (c)(1); and (3) Equilon is entitled to repayments under the Incentive Agreement and Contingent Promissory Note executed between Stonecrest and Equilon in conjunction with the Dealer Agreement. Equilon also seeks injunctive relief that as of June 5, 2006, Stonecrest cease using all Shell marks and return any Shell property to Equilon.

Stonecrest filed four counterclaims in the federal action. The first counterclaim alleges that Equilon violated PMPA when it terminated Stonecrest's dealership. The second counterclaim seeks a declaration of rights under the Dealership Agreement and California Business and Professions Code §21148. The third and fourth counterclaims allege that Equilon violated Business and Professions Code §§ 21148., 21200, respectively. The Court dismissed Stonecrest's third counterclaim because it overlapped directly with the issues adjudicated in the state action.

In the instant motion, Equilon seeks to stay all the proceedings pending a final judgment from the state court, *i.e.*, pending the resolution of Stonecrest's state court appeal. The matter was fully briefed and pursuant to Local Rule 7.1, the Court decides the motion herein without oral argument.

3

04cv0461

1  II.      **DISCUSSION**

2          A.      **LEGAL STANDARD**

3          "[T]he power to stay proceedings is incidental to the power inherent in every court

4  to control the disposition of the causes on its docket with economy of time and effort for

5  itself, for counsel, and for litigants. How this can best be done calls for the exercise of

6  judgment, which must weigh competing interests and maintain an even balance." Landis v.

7  North American Co., 299 U.S. 248, 254-255 (1936).

8          "The pendency of an action in the state court is no bar to proceedings concerning the

9  same matter in the Federal court having jurisdiction . . . ." Colorado River Water

10 Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v.

11 Carland, 217 U.S. 268, 282 (1910)).  However, where state and federal actions are

12 proceeding in parallel on related cases, the consideration to grant a stay takes on particular

13 concerns.  In some circumstances a stay is warranted, for example, where the resolution of

14 the state action would lead to res judicata or collateral estoppel on the federal claims. See

15 e.g., Ollie v. Riggin, 848 F.2d 1016, 1017 (9th Cir. 1988).  However, the Ninth Circuit has

16 warned that a decision to stay federal proceedings is rare, "a narrow exception to the

17 virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"

18 Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1028, 1033 (9th Cir. 2005)

19 (internal quotations omitted).  Similarly, the Supreme Court has cautioned:

20         when a district court decides to dismiss or stay under *Colorado River*, it presumably
           concludes that the parallel state-court litigation will be an adequate vehicle for the
21         complete and prompt resolution of the issues between the parties. If there is any
           substantial doubt as to this, it would be a serious abuse of discretion to grant the stay
22         or dismissal at all. . . .Thus, the decision to invoke *Colorado River* necessarily
           contemplates that the federal court will have nothing further to do in resolving any
23         substantive part of the case, whether it stays or dismisses.

24 Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983).

25         To ascertain whether a district court should stay or dismiss an action in light of a

26 pending state action, generally involves the consideration of a number of factors: (1)

27 whether either court has assumed jurisdiction over a res; (2) the inconvenience of the

28                                          4

04cv0461

1   federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which

2   the forums obtained jurisdiction, <u>Colorado River</u>, 424 U.S. at 818; (5) whether state or

3   federal law controls; (6) whether the state proceeding is adequate to protect the parties'

4   rights, <u>Moses H. Cone</u>, 460 U.S. at 24-26; (7) whether the state and federal suits are

5   substantially similar; (8) whether there is any forum shopping or attempt to avoid adverse

6   rulings by the state court,  <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1416-17 (1989); and (9)

7   which party is seeking the stay.[3]

8   **B.     ANALYSIS**

9       In a consideration to grant or deny a stay, the Court examines the nature of the

10  pending state and federal actions.  Here, while there is some overlap, an examination of the

11  two actions reveals distinct issues.  The state action focuses on the propriety of Equilon's

12  refusal to consent to the assignment from Stonecrest to the Razukis.  The claims for

13  declaratory relief include: (1) the Dealer Agreement obligates Equilon to consent to

14  Stonecrest's assignment; (2) Equilon is estopped from withholding its consent to the

15  assignment; and (3) Stonecrest's assignment to the Razukis is approved, permitted and

16  authorized. Additionally, the state case focuses on aspects of state law, specifically

17  California Business & Professions Code § 21148.

18      In contrast, the instant federal cases focuses on the propriety of Equilon's

19  termination of Stonecrest.  While certainly the facts surrounding the assignment play a

20  prominent part in the events leading up to the termination, whether or not the refusal of the

21  assignment was proper is only one fact among many that figures into the termination.  For

22  example, Equilon alleges Stonecrest committed fraud by concealing an abdication of

23  certain franchise responsibilities and by turning over such responsibilities to the Razukis,

24  _____

25      [3] These factors encompass the traditional considerations applied in the consideration to grant
    or deny a stay under Ninth Circuit law: "the possible damage which may result from the granting of
26  a stay, the hardship or inequity which a party may suffer in being required to go forward, and the
    orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and
27  questions of law which could be expected to result from a stay." <u>Lockyer v. Mirant Corp.</u>, 398 F.3d
    1098, 1110 (9th Cir.2005).

28

04cv0461

Stonecrest failed to comply with terms of the Dealer Agreement and Stonecrest is obligated to return certain payments under the Incentive Agreement and Contingent Promissory Note. Each of these issues raise matters only indirectly connected with the issues pending in state court. Moreover, the instant federal action focuses on federal law governing the petroleum franchise arrangement. Equilon alleges that under PMPA 15 U.S.C.§ 2802(b)(2)(A), (b)(2)(C), (c)(1) its termination of Stonecrest is proper; Stonecrest has counterclaimed that Equilon violated PMPA.

The Court also considers the fact that the Plaintiff in this action is seeking the stay, and that although only one or two factors in the instant case may overlap with the state action, that judgment is not a final one.

In addition, since the Court enjoined the Plaintiff from terminating Stonecrest's franchise and franchise relationship pending resolution of these issues, there appears to be no prejudice to the Defendant.

Therefore, the Court **GRANTS** Plaintiff's motion to stay all proceedings in this Court pending a final resolution of the state court judgment which is on appeal. The injunction preventing termination of the franchise and franchise relationship remains in effect.

**IT IS SO ORDERED**


DATED:  December 28, 2006

Hon. Rudi M. Brewster
United States Senior District Judge


cc: Hon. William McCurine Jr.
    United States Magistrate Judge

    All Counsel of Record

6

04cv0461